IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 13-cr-00236-JLK

UNITED STATES OF AMERICA,

          Plaintiff,

v.

ROBERTO SANCHEZ-MARTINEZ,

          Defendant.

---

## ORDER REGARDING THE GOVERNMENT'S MOTION TO REOPEN DETENTION HEARING

---

Magistrate Judge Shaffer

      THIS MATTER comes before the court on the government's Motion to Reopen Detention Hearing (doc. #14) filed on June 28, 2013.  Defendant Roberto Sanchez-Martinez filed a Response (doc. #20) on July 7, 2013.  I have carefully reviewed the parties' briefs and related exhibits, the entire court file and applicable case law.  The court also has considered the arguments of counsel during hearings on June 18 and 19, and July 2 and 8, 2013.  For the following reasons, the court will deny the government's motion.

      Defendant Sanchez-Martinez was indicted on June 3, 2013, charged with a single violation of 8 U.S.C. § 1326(a) and (b)(2).  That statute makes it a crime for an alien who has been deported or removed, or has departed the United States, thereafter to enter or be found in the United States having failed to apply for admission prior to re-embarkation at a place outside the United States.  Enhanced penalties are authorized where the defendant alien was removed

1

subsequent to a conviction for commission of an aggravated felony.  Mr. Sanchez-Martinez was arrested on this indictment on June 6, 2013 and arraigned on June 11, 2013.  This matter has been set for a three-day trial to commence on August 12, 2013 before the Honorable John L. Kane.

This court conducted an initial detention hearing on June 18, 2013, at which time the government requested that the Defendant remain in the custody of the United States Marshal pending resolution of this case.  After colloquy with counsel, I continued the detention hearing to allow defense counsel additional time to investigate whether his client's family could post a property bond sufficient to reasonably assure Mr. Sanchez-Martinez's appearance for further proceedings in this matter.  The detention hearing resumed on June 19, 2013.  At the conclusion of that hearing, I found that sufficient conditions of pretrial release could be set, notwithstanding the Defendant's immigration status and a pending ICE detainer.  I remanded Mr. Sanchez-Martinez back to the custody of the United States Marshal with the expectation that the Defendant would be released once the required property bond was posted and the Defendant's residence was approved for electronic monitoring.

In the interim, the government filed its pending Motion to Reopen Detention Hearing. The court heard argument on that motion on July 2, 2013, and then continued that hearing to allow defense counsel an opportunity to file a responsive brief.  The detention hearing resumed on July 8, 2013, at which time the court considered a supplemental exhibit proffered by the government, as well as additional argument from counsel.

**ANALYSIS**

To put the pending motion in context, Mr. Sanchez-Martinez, an admitted citizen of the Republic of Mexico, was deported from the United States on June 2, 1999, following his conviction for an aggravated felony.  *See* Request to United States's Attorney's Office, attached as Exhibit 2 to the Motion to Reopen Detention Hearing.  While it appears to be undisputed that the Defendant re-entered the United States without prior permission from the United States Attorney General, the Defendant has on different occasions identified 2002 or 2005 as the year he returned to the United States.  On November 23, 2012, Mr. Sanchez-Martinez was arrested by the Aurora, Colorado Police Department and charged with driving while ability impaired.  On that same day, Immigration Enforcement Agent Patrick Elliott placed a detainer on Mr. Sanchez-Martinez after determining that the Defendant "was not in possession of valid immigration documents allowing him to be in or remain in the United States legally."  *Id.*  On May 24, 2103, Mr. Sanchez-Martinez was transferred to ICE custody.  Based upon a sworn statement obtained from the Defendant, as well as "immigration and criminal records checks, and . . . fingerprinting identification," Mr. Sanchez-Martinez "was processed for administrative removal through the reinstatement of his prior order of removal, pursuant to Section 241(a)(5) [8 U.S.C. § 1231(a)(5)] of the Immigration and Nationality Act (INA)."  *Id.*  On May 24, 2013, the Defendant was served  "with a Notice of Intent/Decision to Reinstate his Prior Order of Removal."  *Id.*  Four days later, ICE provided the United States Attorney's Office with a request for "Acceptance/Declination of Prosecution."  That request presumably precipitated the Defendant's indictment on June 3, 2013.

This court starts its analysis with the understanding that the Defendant's immigration

3

status and the pending ICE detainer are not adequate grounds, standing alone, to justify pretrial

detention.  *See United States v. Salas-Urenas*, 430 Fed. Appx., 721, 723 (10th Cir. 2011)

(declining to find that pre-trial detention is proper based solely on a defendant's immigration

statute or an ICE detainer).  *Cf. United States v. Morales*, 2012 WL 603520, at *2 (D. Kan. Feb.

24, 2012) (observing that "the existence of [an] ICE detainer is not in and of itself sufficient

grounds to find that a defendant poses a flight risk"); *United States v. Montoya-Vasquez*, 2009

WL 103596, at *5 (D. Neb. Jan. 13, 2009) ("If Congress wanted to bar aliens with immigration

detainers from eligibility for release, it could readily have said so, but did not.").  *See also*

*United States v. Tapia*, __ F. Supp. 2d __, 2013 WL 557278, at *4 (D.S.D. Feb. 12, 3013) and

cases cited therein.  Yet, in moving to reopen the issue of detention, the government focuses

exclusively on the Defendant's immigration status and the implications of the pending detainer.

The government argues that "[t]he Immigration and Customs Enforcement (ICE) division

of the Department of Homeland Security has given notice by means of an ICE detainer that

defendant's '[d]eportation or removal from the United States has been ordered.'" From that

single fact, the government presumes that

> Inexorably, if Sanchez-Martinez is not ordered detained, he will be deported
> before trial and sentencing can be completed.  The government avers that because
> the defendant will be deported pursuant to the ICE detainer prior to the
> completion of his case, by a preponderance of the evidence, no condition or
> combinations of conditions will reasonably assure the appearance of the
> defendant.

*See* Motion to Reopen Detention Hearing, at 4.

In further support of its motion, the government proffers an affidavit from Christopher L.

Jones, a Supervisory Detention and Deportation Officer at the Aurora ICE Processing Center in

Aurora, Colorado.  Mr. Jones states that if the Defendant is released from the Marshal's custody

4

pursuant to this court's order, "he will immediately be taken into the custody of ICE and will be detained at the ICE Processing Center."  According to Mr. Jones, the Defendant "is subject to reinstatement of a prior order of removal" and, therefore "will not be released from the custody of ICE on bond [and] will remain in the custody of ICE until he is removed from the United States to Mexico."  *See* Sworn Statement of Christopher L. Jones, attached as Exhibit 1 to Motion to Reopen Detention Hearing.  Notably, Mr. Jones' affidavit is silent as to when Mr. Sanchez-Martinez might be deported from the United States or whether the timing of that removal is mandated under any particular statutory ore regulatory provision.

During proceedings on July 8, 2013, government counsel suggested that if Mr. Sanchez-Martinez was released to ICE custody, he would be removed from the United States within 90 days, pursuant to 8 U.S.C. § 1231(a)(1).  That statutory provision provides that a 90-day removal period begins on the latest of:

(i)   The date the order of removal becomes administratively final.[1]

(ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.[2]

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*See* 8 U.S.C. § 1231(a)(1)(B).  If Mr. Sanchez-Martinez were to be found guilty of the charged offense at the conclusion of the trial commencing on August 12, 2013, preparation of sentencing

---

[1]Assuming that Mr. Sanchez-Martinez received notice of a final administrative decision on May 24, 2013, the 90-day period would expire on August 22, 2013.

[2]*See Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 (10th Cir. 2003) (noting that while petitions for review of orders of removal must be filed, pursuant to 8 U.S.C. § 1252(b)(1), within 30 days of the date of the final order of removal, an alien does have a separate right to petition for direct review of the Secretary's reinstatement order).

documents and completion of a presentence investigation would almost certainly extend beyond the 90-day removal period. *See* D.C.COLO.LCrR 32.1. To the extent that conditions of pretrial release should "reasonably assure the appearance of the [defendant] as required," *see* 18 U.S.C. § 3142(c)(1)(B), the government argues that the Defendant's return to ICE custody and strict application of the 90-day removal period would result in his deportation and effectively override any conditions this court might set.

However, I also take judicial notice of § 1231(a)(5) of the Immigration and Nationality Act which provides that if the Secretary of the Department of Homeland Security (formerly the Attorney General) finds that an alien has reentered the United States illegally after being removed under an order of removal,

> the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at *any time after the reentry.*

8 U.S.C. § 1231(a)(5) (emphasis added). This provision, which speaks directly to Mr. Sanchez-Martinez's circumstances, seems to permit the Secretary some discretion in determining when deportation will occur following reinstatement of the removal order.

Moreover, I have reviewed pertinent provisions in the Code of Federal Regulations. By regulation, "[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under § 215.3." *See* 8 C.F.R. § 215.2(a). That same provision mandates that "[a]ny departure-control officer who knows or who has reason to believe that the case of an alien in the United States comes within the provisions of

§ 215.3 shall temporarily prevent the departure of such alien from the United States."[3]  *Id.*

Section 215.3 further states that "departure from the United States . . . shall be deemed

prejudicial to the interests of the United States" in the case of

> [a]ny alien who is needed in the United States . . . as a party to, any criminal case
> under investigation or pending in a court in the United States: *Provided*, That any
> alien who is . . . a party to, any criminal case pending in any criminal court
> proceeding may be permitted to depart from the United States with the consent of
> the appropriate prosecuting authority, unless such alien is otherwise prohibited
> from departing under the provisions of this part.

*See* 8 C.F.R. §215.3(g).  Government counsel has not indicated whether the United States

Attorney's Office has made any attempt to invoke this provision in the case of Mr. Sanchez-

Martinez.  Similarly, this court has not been advised as to whether ICE would honor such a

request and defer the Defendant's removal as an alien whose departure would be prejudicial to

the United States.  *Compare United States v. Hernandez*, 2012 WL 1034942, at *3 (D. Kan. Mar.

27, 2012) (while noting that ICE had advised the Acting United States Attorney for the District

of Kansas that it would not withhold deportation on the basis of 8 C.F.R. § 215.3(g), the court

expressed a disinclination to "consider Defendant a flight risk on the basis that two executive

branches cannot work together;" the court detained the defendant based upon an applicable

statutory presumption for detention).  Without that information, the court is not inclined to

assume, as the government's motion suggests, that the Defendant's removal is truly imminent.

---

[3] The pertinent federal regulation states that the "term departure-control officer means
any immigration officer . . . who is designated to supervise the departure of aliens."  *See* 8 C.F.R.
§ 215.1(i).  In his affidavit, Christopher Jones described himself as a "Supervisory Detention and
Deportation Officer" at the Aurora ICE Processing Center in Aurora, Colorado, which
presumably would process Mr. Sanchez-Martinez's removal.  It seems reasonable to assume in
light of his affidavit that Mr. Jones "knows or has reason to believe" that Mr. Sanchez-Martinez
is a party to a pending criminal prosecution whose "departure would be prejudicial to the
interests of the United Stats under the provisions of § 215.3."

In sum, the government suggests that the Defendant's presence in the United States as an alleged illegal alien and the ensuing ICE detainer virtually guarantee that Mr. Sanchez-Martinez will be deported within the next 90 days, before his criminal case can be concluded. From that presumption, the government concludes that Mr. Sanchez-Martinez must remain in the custody of the United States Marshal to assure his appearance at trial. Notwithstanding the fact that ICE took the initiative to notify the United States Attorney's Office of Mr. Sanchez-Martinez's status and apparent violation of 8 U.S.C. § 1326(a) and (b)(2), thereby triggering the instant prosecution, the government now argues that ICE will knowingly frustrate that prosecution by removing Mr. Sanchez-Martinez from the United States "prior to the completion of his case." I am not convinced that the government's position is consistent with the Bail Reform Act, 18 U.S.C. § 3142, the Immigration and Nationality Act, 8 U.S.C. § 1231, or prevailing case law. Indeed, the government's argument effectively would make pretrial detention automatic in every case involving a violation of 8 U.S.C. § 1326(a) and (b)(2).

I am well aware that many courts have wrestled with the same issue raised in the government's motion. Each side has cited judicial precedents that support its particular position. *Compare United States v. Vencomo-Reyes*, 2011 WL 6013546 (D.N.M. Nov. 28, 2011) and *United States v. Jocol-Alfaro*, 840 F. Supp. 2d 1116 (N.D. Iowa 2011). While those cases make for interesting reading, ultimately this court must exercise its authority based upon the particular facts of this case. Without controlling precedent in the Tenth Circuit, I believe the pending motion must be decided based upon the burden of persuasion established in the Bail Reform Act. In the absence of any applicable statutory presumption in favor of detention, I must weigh the government's arguments against its concomitant burden of persuasion. It is incumbent upon the

8

United States Attorney's Office to come forward with facts and law to support its unequivocal assertion that Mr. Sanchez-Martinez will be removed from the United States before the pending criminal case can be concluded.  I find that the government has not sustained that burden of persuasion, particularly in light of the very limited representations contained in Mr. Jones' affidavit.  *Cf. United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 858 (N.D. Iowa 2010) (refusing to speculate on the possible results of pending immigration proceedings involving the defendant); *United States v. Campos*, 2010 WL 454903, at *4 (M.D. Ala. Feb. 10, 2010) ("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him. . . . Speculation is not evidence, much less preponderating evidence.").  In short, this court cannot say with any certainty when Mr. Sanchez-Martinez might be removed from the United States and is loath to detain the Defendant based upon an affidavit that is silent on that very point.[4]

--------

[4]If the Defendant was found guilty before the 90-day removal period had expired and thereafter was awaiting sentencing, presumably the government could invoke 18 U.S.C. § 3143(a), which provides that the judicial officer "shall" detain a defendant awaiting imposition of sentence unless the court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  *See also United States v. Ingle*, 454 F.3d 1082, 1084 (10th Cir. 2006) ("Pending sentencing, the presumption is that a defendant will be detained."); *United States v. Ross*, 730 F. Supp. 355, 356 (D. Kan. 1990) ("A presumption of detention is created under 18 U.S.C. § 3143(a). In overcoming this presumption, the defendant has the burden to prove, by clear and convincing evidence, that he will not flee or pose a danger . . . to the community.").  *See also United States v. Vasquez*, 413 Fed. Appx. 42, 43-44 (10th Cir. 2011) (observing that where the defendant was the subject of a reinstated removal order and was awaiting sentencing, it was not necessary to address the various scenarios under which the defendant might be released from ICE custody "because regardless of what is possible, Mr. Vasquez was required to show, *by clear and convincing evidence*, that he is not likely to flee (i.e., that he is likely to appear in court when required).").

In order to sustain a motion for detention, the government must establish that (a) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the defendant's presence for court proceedings; or (b) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the safety of any other person or the community.[5]  The former element must be established by a preponderance of the evidence, while the latter requires proof by clear and convincing evidence.  The Bail Reform Act favors pretrial release of defendants, *see, e.g., United States v. Bradshaw*, 2000 WL 1371517, at *3 (D. Kan. July 20, 2000), and "[t]he court must resolve all doubts regarding the propriety of release in the defendant's favor." *United States v. Morales*, 2012 WL 603520, at *1 (D. Kan. Feb. 24, 2012), citing *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 965 (E.D. Wis. 2008).

The Bail Reform Act directs the court to consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1)  [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including –

(A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

---

[5]The government has not argued that Mr. Sanchez-Martinez poses a danger to any member of the community.

       (B)      whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

   (4)      the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).  While the court cannot detain Mr. Sanchez-Martinez based solely on his immigration status or the ICE detainer, those facts are relevant and should be considered in the court's application of the Bail Reform Act.  *United States v. Salas-Urenas*, 430 Fed. Appx., at 723.

A.     *The Nature and Circumstances of the Charged Offense*

As noted, the Defendant is charged with a violation of 8 U.S.C. § 1326(a) and (b)(2), which carries a maximum penalty of 20 years imprisonment, a fine of $250,000, and not more than three years of supervised release.  While the federal grand jury has found probable cause to believe Mr. Sanchez-Martinez committed the charged offense, at this stage of the proceedings, the Defendant is presumed innocent until proven guilty.  *Cf. United States v. Call*, 874 F. Supp. 2d 969, 977 (D. Nev. 2012).  If the presumption of innocence is to have any meaning, this factor must weigh in favor of release.

B.     *The Weight of the Government's Evidence*

Given the Defendant's prior sworn statement to ICE agents, the weight of the evidence in this case seems strong.  *Cf. United States v. Luna-Bolanos*, 369 Fed. Appx. 947, 949 (10th Cir. 2010) (holding that the defendant's admissions, coupled with records searches conducted by ICE employees, provided evidence sufficient for the jury to find beyond a reasonable doubt that defendant had not obtained express consent to reapply for admission to the United States after

11

his deportation).  It could be inferred that Mr. Sanchez-Martinez might have a heightened

motivation to flee if the government's evidence makes a conviction all but certain.  *Cf. United*

*States v. Perez-Chavez*, 422 F. Supp. 2d 1255, 1267 (D. Utah 2005) (observing that "an illegal

re-entry case is easy to prove" as the prosecutor must "demonstrate little more than that a

defendant was found illegally present in this country").  This factor weighs in favor of pretrial

detention.

C.      *The Defendant's History and Characteristics*

        To his credit, Mr. Sanchez-Martinez does have long-standing ties to the District of

Colorado.  The Defendant has been living in Aurora, Colorado since his return to the United

States, along with his father and two siblings.[6]  Although the Defendant is not married, he has

been in a common law relationship with the same woman for the past 13 years and the couple

has two minor children.  Their youngest child, age 2, suffers from Downs syndrome and

developmental disabilities associated with congenital heart defects, for which he receives

ongoing medical treatment.  Medical providers have described Mr. Sanchez-Martinez as playing

an integral part in his son's treatment and therapy.  Given the extraordinary medical needs of his

son and the number of medical specialists in Denver engaged in his treatment, there may be

reduced incentives for Mr. Sanchez-Martinez to surreptitiously re-locate his family to some other

part of the United States or Mexico.  The Defendant and his family are reported to be active

parishioners in their church.  Mr. Sanchez-Martinez has been described as a hard worker and the

sole provider for his family.  Although the Defendant's immigration status might preclude

---

        [6]Pretrial Services reports the Defendant has two brothers who live in Mexico.  Although
Mr. Sanchez-Martinez has a valid Mexican passport, he claims that he has not traveled outside
the United States since 2002.

continued employment, between 2007 and 2012, the Defendant was the manager of a remodeling business that was registered in his brother-in-law's name and employed seven individuals.

The court has been provided with several letters from the Defendant's siblings and friends, all attesting to the Defendant's devotion to his wife and children. *See* Defendant's Exhibits for Detention Hearing in Support of Bail (doc. #10). Family members also have submitted to the Clerk of Court the necessary documentation to post a property bond in the amount of $50,000, even knowing that the Defendant's involuntary removal from the United States could place that bond in jeopardy.

The Defendant's criminal history, while serious, has been ameliorated by the passage of time. Mr. Sanchez-Martinez was convicted in 1996 of misdemeanor theft and failing to appear, and received a sentence of 15 days in jail and 36 months of probation. The Defendant was convicted of misdemeanor burglary in 1996 and given 7 days in jail and 36 months of probation. Also in 1996, the Defendant was convicted of misdemeanor false identification and sentenced to 6 days in jail. All of the foregoing offenses were committed before Mr. Sanchez-Martinez reached his 22nd birthday. In 1997, Mr. Sanchez-Martinez was convicted of felony possession of cocaine base and sentenced to 180 days in jail and 36 months probation. His probation in that case was revoked in 1998 and the Defendant received a sentence of three years confinement. On May 8, 1998, in two separate cases, Mr. Sanchez-Martinez was convicted of possessing a controlled substance and in each case received a sentence of 16 months confinement. The Defendant was deported from the United States on June 2, 1999. The foregoing felonies were committed when Mr. Sanchez-Martinez was 22 and 23 years old, respectively. The Defendant is now 38 years old. Since he returned to the United States in 2005, Mr. Sanchez-Martinez has

been charged with only one criminal violation, *i.e.*, the aforementioned driving while ability impaired, to which he pled guilty.  While the Defendant's criminal record gives reason for pause, I must weigh the age of those convictions against his current ties to the District of Colorado.

While acknowledging that nothing short of detention can ever guarantee the defendant's appearance at further proceedings, I find that conditions of release can be set that will *reasonably assure* that Mr. Sanchez-Martinez is present at trial.  *Cf. United States v. Orta*, 760 F.2d 887, 889-90 (8th Cir. 1985) (noting that the Bail Reform Act does not require the magistrate judge to find that conditions of release will "guarantee" the defendant's appearance or the safety of the community).

## CONCLUSION

Accordingly, I am directing that the Defendant be released under the previously stated conditions, including a bond in the amount of $50,000 secured by property of a sufficient unencumbered value, and electronic monitoring,

In closing, I acknowledge the practical consequences of this ruling.  Immediately upon his release from the custody of the United States Marshal, the Defendant will be transferred to the custody of Immigration and Customs Enforcement where, if Mr. Jones is correct, he will remain without bond.  While the Bail Reform Act seeks to avoid needless pretrial detention, *see, e.g., United States v. Lozano*, 2009 WL 3834081, at *6 (M.D. Ala. Nov. 16, 2009), the conditions of release I am imposing will have no immediate effect on the Defendant's liberty. Moreover, by opposing the government's request for pretrial detention and being transferred to the administrative custody of ICE, Mr. Sanchez-Martinez may find that he has simply lost his right to obtain credit against any eventual sentence for time spent in pretrial confinement.

14

Nevertheless, I respect the Defendant's right to make a decision that ultimately may prove be quixotic.

  Dated this 11th day of July, 2013.

        BY THE COURT:


        s/Craig B. Shaffer
        United States Magistrate Judge